# Robert H. Johnson LLC

1818 OLD CUTHBERT ROAD · SUITE 107 · CHERRY HILL · NEW JERSEY · 08034
(P) 856.298.9328 · (F) 856.324.9074
rjohnson@rhjlaw.com

June 16, 2023

**Via ECF**
Honorable Andrew B. Altenburg
United States Bankruptcy Court
Mitchell H. Cohen U.S. Courthouse
400 Cooper Street, 4th Floor
Camden, N.J. 08101

      **Re:**    **Keith R. DeVan**
              **Case No. 18-14904 (ABA)**

Dear Judge Altenburg:

Please accept this correspondence in lieu of a more formal memorandum in support of Defendant, Keith R. DeVan's (the "Debtor") motion to cancel and discharge Wilmington Savings Fund Society, FSB, As Trustee Of Stanwich Mortgage Loan Trust I's (the "Secured Creditor") mortgage on property located at 112 N. King Street, Magnolia, NJ 08049 (the "Property").

**A.**    **PRELIMINARY STATEMENT**

A bankruptcy case may contain multiple "final orders." In the present case, there are at least two "final orders." Which final order controls when there is an order changing the amount of the secured creditor's claim post confirmation when the post confirmation order does not modify the valuation of collateral, the confirmed plan or the motion to partially void liens. Which "final order" trumps the other?

While these orders are closely related, they are in fact mutually exclusive. An order changing the claim amount is distinguished from the mechanism by which claims are paid, determined and crammed down. Here, the amount of the claim was changed for the specific purpose of resolving an unrelated motion and was silent on the valuation of collateral and the confirmed plans impact. The post confirmation order did not address, modify, or alter the valuation of the debtor's property. This does not void the post confirmation order, but rather makes it moot when administering the confirmed plan. In contrast, the confirming order addresses the issues of valuation

of the real property and the removing of liens were previously settled and therefore binding upon the parties.

In simplest terms, the value of the collateral and the treatment of the lien on said collateral made under FRBP Rule 3012 was determined and is binding pursuant to both FRBP Rule 3015 (g) and res judicata of final confirmed plan. A post confirmation order as to the claim amount does not alter or modify the valuation of the collateral or the treatment of the lien of a confirmed and now completed plan.

**B.     PROCEDURAL BACKGROUND**

On March 14, 2018, the Debtor filed a voluntary petition for relief under chapter 13 of the United States Bankruptcy Code. On March 14, 2018, the Debtor also filed a Chapter 13 Plan and Request for Valuation of Security, Motion for Lien Avoidance and Assumption of Executory Contracts and Unexpired Leases ("Debtor's Plan"). Specifically, the Debtor's Plan proposed to cram down Wells Fargo Bank, N.A's ("Wells") secured claim of $202,114 ("Original Claim") to $110,000. On April 19, 2018, Wells objected to Debtor's Plan. Each party conducted independent appraisals of real property and after significant negotiation, the parties entered a consent order Resolving Objection to Confirmation of Plan on October 23, 2018; ECF Doc: 49 ("Cramdown Consent Order").

Specifically, the Cramdown Consent Order fixed the value of the the Property at $125,000 and the parties agreed that the amount paid would accrue 5.75% interest for a total of $141,841.14 ("Crammed Amount"). The Crammed Amount was incorporated into an order that was entered on January 24, 2019, confirming the Debtor's Chapter 13 Plan ("Confirmed Plan").

The Confirmed Plan ordered that the Debtor pay the Standing Trustee $3,244.00 for a period of 50 months (the "Plan Payments") together with $22,000 that was already paid.

After the Confirmed Plan, due to issues with the Debtor's disability, the Debtor fell behind

2

with the Plan Payments. To be proactive and explore all options, the Debtor filed a Motion for Approval to Participate in the Court's Loss Mitigation Program on May 8, 2019 ("Loss Mit Motion').

On May 13, 2019, Wells objected to the Loss Mit Motion. On May 28, 2019, the Trustee filed a Certification of Default for failure to make Plan Payments. On June 9, 2019, the Debtor filed a Modified Chapter 13 Plan, proposing a Loan Modification with the Wells Secured Claim and lower his monthly plan payments. On July 2, 2019, a Consent Order resolving Objection to Motion for Approval to Participate in the Court's Loss Mitigation Program; ECF Doc: 68. ("Loss Mit Order") was entered resolving the Loss Mit Motion. The Loss Mit Order was necessary as the Modified Chapter 13 Plan proposed to treat Wells Fargo differently than the Confirmed Plan, making the Cramdown Consent Order moot. <u>More importantly</u>, Wells wanted assurances that the Debtor was not attempting to modify the Crammed Amount, but rather modify the Original Amount.

In the beginning of September, the Debtor's disability payments were finalized, making the Confirmed Plan feasible. As a result, On September 11, 2019, the Debtor withdrew his Modified Plan.

Prior to and after withdrawing the Modified Plan, it was made abundantly clear to Wells and Well's attorneys that the Debtor's intention was to proceed with the Confirmed Plan. Despite correspondence and teleconferences between Debtor and Well's counsel regarding the status of the Well's claim, no specific action taken by either party[1]. On May 13, 2021, Wells transferred their claim to the Secured Creditor. On January 20, 2022, to avoid any ambiguities, the Debtor filed a Motion to Vacate the Loss Mit Order ("Motion to Vacate"). However, after questions whether the

---

[1] The Debtor was left with no action. Filing a Modified Plan after Confirmation would have been superfluous as the Debtor was not seeking to modify the Confirmed Plan.

3

filing of the Motion to Vacate is proper procedure, Debtor withdrew the Motion to Vacate on March 21, 2022 and continued proceed with the Confirmed Plan.

C.     **LEGAL ARGUMENT** –

1. **The Crammed Down Treatment of the Secured Creditors Claim is based <u>on the value of the property</u> and not the amount of a claim filed by the Creditor or listed by the Debtor on the Petition.**

Normally, in bankruptcy, "a claim that is secured by a lien on property is treated as a secured claim 'only to the extent of the value of the property on which the lien is fixed,'" and the remainder is unsecured. In re Scarborough, 461 F.3d 406, 409-10 (3d Cir. 2006) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 239, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989)); see 11 U.S.C. § 506(a)(1). As a result, "a claim that is not fully collateralized can be modified, and the creditor['s claim is] said to be 'crammed down' to the value of the collateral." In re Ferandos, 402 F.3d 147, 151 (3d Cir. 2005). ("[A] claim that is not fully collateralized can be modified, and the creditor said to be 'crammed down' to the value of the collateral."); In re Ferandos, 402 F.3d at 151; See 11 U.S.C. § 506(a)(1). In re Jones, 828, F. App'x 127, 128n.4 (3d Cir. 2020)

It is undisputed that each party conducted independent appraisals of the Property and after significant negotiation, entered the Cramdown Consent Order. It is further undisputed that the confirmation hearing on this matter was held and the Confirmed Plan was entered. The Confirmed Plan specifically and clearly crammed down Wells Fargo claim to $141,841.14 based on the determined valuation of the Property.

2. **The Cramdown in the Confirmed Plan is Final and is Given Res Judicata Effect.**

A debtor's bankruptcy case "involves an aggregation of individual controversies, many of which would exist as stand-alone lawsuits but for the bankrupt [*371] status of the debtor." Bullard v. Blue Hills Bank, 575 U.S. __, 135 S. Ct. 1686, 1692, 191 L. Ed. 2d 621 (2015) (internal quotations omitted). In view of this unique status, a bankruptcy case may contain many "final decisions" that do not necessarily fit squarely into the conventional formulation of res judicata, which is a product of "ordinary civil litigation." See id. at 1691-92. Nonetheless, Chapter 13 confirmation orders have a preclusive effect on those issues litigated by or determined at confirmation, as the plan confirmation order is a "final determination" as to those matters it actually addresses. See 11 U.S.C. §

1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."); In re Varat, 81 F.3d at 1315 ("[T]he confirmation order constitutes a final judgment on the merits with res judicata effect.").

### i. 11 U.S.C. § 1327(a)

Once the plan is confirmed, the plan is binding on the debtor and all creditors, whether or not the plan provides for a creditor and whether or not a creditor has accepted or objected to the plan. 11 U.S.C. § 1327(a). Section 1327(a) is often referred to as giving res judicata effect to a confirmed plan. When a bankruptcy court enters a confirmation order, it renders a final judgment. In re Arctic Glacier Int'l, Inc., 901 F.3d 162, 166 (3d Cir. 2018), as amended (Oct. 24, 2018) (citing 8 Collier on Bankruptcy ¶ 1141.01 [4], at 1141-11 (Richard Levin & Henry J. Sommer eds., 16th ed. 2017)). "That judgment, like any other judgment, is res judicata. Id. "It bars all challenges to the plan that could have been raised. Challengers must instead raise any issues beforehand by objecting to confirmation." Id. "A plan's preclusive effect is a principle that anchors bankruptcy law: A confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation." Id. (cleaned up, emphasis added); cf In re Harrison, 259 B.R. 794, 798 (Bankr. M.D. Ga. 2000) (Chapter 13 trustee's proceeding to avoid creditor's security interest in debtor's mobile home was not precluded where the avoidance issue was not raised before confirmation, and the issue could not have been raised by trustee, since she did not discover the untimely perfection of creditor's lien until after confirmation). Freedom Mortg. Corp. v. Smith, Civil Action No. 21cv11025 (EP), 2022 U.S. Dist. LEXIS 210350 (D.N.J. Nov. 21, 2022)

"Thus, the entire [confirmed p]lan is res judicata, including its releases" Arctic Glacier, 901 F.3d at 166 (emphasis added). The same is true of a consent decree, "a final judgment on the merits... accorded res judicata effect except where there has been an express reservation of rights." In re Galluzzo, No. 06-15392-SLM, 2018 Bankr. LEXIS 2436, 2018 WL 4191476, at *22 (Bankr. D.N.J. Aug. 14, 2018) (citing Espinosa, 559 U.S. at 275), aff'd, No. 06-BK-15392, 2021 U.S. Dist. LEXIS 261904, 2021 WL 9595296 (D.N.J. Oct. 25, 2021), aff'd No. 22-1550, 2022 U.S. App. LEXIS 28798, 2022 WL 10319775 (3d Cir. Oct. 18, 2022). Res judicata is a double-edged sword, applying equally to debtors and creditors. See, e.g., Ruhl v. HSBC Mortg. Servs., Inc., 399 BR. 49, 57 (E.D.

Wis. 2008) (holding that Chapter 13 debtors' attempts to recover excess interest were barred by res judicata); In re Beam, 510 B.R. 399, 404 (Bankr. N.D. Ga. 2014) (Chapter 13 debtors were barred from belatedly asserting that value of mortgaged property on petition date was lower for the purposes of "stripping off junior mortgage lien). Freedom Mortg. Corp. v. Smith, Civil Action No. 21cv11025 (EP), 2022 U.S. Dist. LEXIS 210350 (D.N.J. Nov. 21, 2022).

Hear, the issue of the valuation of the Property has been raised and decided. The Confirmed Plan specifically and clearly crammed down Wells Fargo claim to $141,841.14 based on the determined valuation of the Property. The Debtor made all payments required by the Plan. The Trustee administered the case consistent with the Confirmed Plan and issued the completion of the letter.

### i. Espinosa

The Supreme Court's decision in Espinosa does not call for a different result. See, United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 130 S.Ct. 1367, 176 L. Ed. 2d 158 (2010). There the Court was dealing with a challenge to a confirmed plan, coming years after the plan had been confirmed, fully performed and the debtor discharged, based upon the argument that the confirmation order was void under Rule 60(b)(4) of the Federal Rules of Civil Procedure. Espinosa, 130 S. Ct. at 1374. The Court held that it was not, concluding that a judgment is void for the purposes of Rule 60(b)(4) only in the "rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." Espinosa, 130 S.Ct. at 1377.

This situation is applicable here. Here, the Secured Creditor in essence is challenging the validity of the Confirmed Plan and is seeking to undo the Plan's provisions.

### 3.  New FRBP 3015(g) Addresses The Effect of Confirmation.

Since 2017, FRBP 3015(g) contains a new subsection, entitled, "Effect of Confirmation." Section 1 of Amended Rule 3015(g) states that a confirmed plan controls the amount of a secured claim under Amended Rule 3012 and is binding on the holder of the secured claim. Filing a proof of claim with a contradictory secured claim amount is insufficient to challenge the amount of the secured claim as determined in a Chapter 13 plan.

Likewise, the amount of the secured claim as determined by the plan overrides the amount of

the secured claim set out in the debtor's schedules. FRPB 3015 (g) was amended in 2017. Due to this amendment being relativity new, there are no decisions with regard to the rule.

However, it is well settled that the first canon of statutory interpretation is that a court must begin, and where appropriate end, with the statutory language. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then this first canon is also the last: judicial inquiry is complete." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010) (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 117 L. Ed. 2d 391, (1992) (internal citations and quotations omitted). To determine whether language is unambiguous, courts should "read the statute in its ordinary and natural sense." *Id.* (citing *Harvard Secured Creditors Liquidation Trust v. I.R.S.*, 568 F.3d 444, 451 (3d Cir. 2009). A statutory provision is ambiguous only where the disputed language is "reasonably susceptible of different interpretations." *Id.* (citing *Dobrek v. Phelan*, 419 F.3d 259, 264 (3d Cir. 2005) (quoting *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 473 n. 27, 105 S. Ct. 1441, 84 L. Ed. 2d 432 (1985))). Where a "statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6, 120 S. Ct. 1942, 147 L. Ed. 2d 1 (2000) (internal quotation marks omitted.

Here, the language in FRBP 3015(g) is quite plain and this court should enforce its terms. The Confirmed Plan controls the amount of the Secured Claim under Amended Rule 3012 and is binding on the holder of the secured claim.

**D.     CONCLUSION**

The Secured Creditor does not deny or object that the Debtor has successfully completed his Confirmed Plan, which provides for the discharge and cancellation of record of the mortgage held by Secured Creditor on property located at 112 N. King Street, Magnolia, NJ 08049 (the "Property"). The Secured Creditor does not assert that the Confirmed Plan was modified. Additionally, the Secured Creditor does not deny or object that Debtor has filed a Certification in Support of Discharge and that the Chapter 13 Trustee has issued a Plan Completion Letter. The Debtor has met his obligations and is therefore entitled to the relief sought. Based upon the foregoing, the Debtor is

entitled to discharge and cancel of record of the mortgage held by Secured Creditor on property located at 112 N. King Street, Magnolia, NJ 08049.

        Respectfully submitted,

        */s/ Robert H. Johnson*

        Robert H. Johnson

RHJ:bms
cc:    Keith R. DeVan (via Email)